UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES S,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

Case No. 3:25-cv-05178-TLF

ORDER REVERSING AND
REMANDING FOR AN AWARD OF
BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of defendant's denial of his application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). *See* Administrative Record ("AR") 23. Under 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties consent to the jurisdiction of a Magistrate Judge. Dkt. 4.

Plaintiff challenges the Administrative Law Judge's ("ALJ") decision that he was not disabled and thus not entitled to benefits. Dkts. 1, 11. Defendant agrees the ALJ's decision requires both reversal and a remand. Dkt. 15 at 2. However, defendant argues the Court should reject plaintiff's request to remand for an immediate award of benefits (Dkt. 11 at 18-19; Dkt. 15 at 2, 4) and instead remand for further proceedings. Dkt. 15 at 6.

After considering the briefs, record, and applicable law, the Court reverses and remands this matter for an immediate award of benefits.

1

## I. BACKGROUND

Plaintiff filed his SSI and DIB claims in March 2020, alleging disability beginning on August 7, 2019. AR 23. Defendant denied plaintiff's claim initially and on reconsideration. Plaintiff appealed; an ALJ held a hearing in August 2021 and issued an unfavorable decision in September 2021. AR 20, 41. Plaintiff appealed to this Court which reversed and remanded based on the parties' stipulation. AR 823-24, 826. The ALJ held another hearing in August 2024. AR 756. The ALJ found plaintiff had severe impairments of major depressive disorder and generalized anxiety disorder, AR 723, and the date last insured was June 30, 2024, for the DIB claim. AR 723. The ALJ issued an unfavorable decision in November 2024. AR 717-37, and plaintiff appealed to this Court. Dkt. 1.

## II. DISCUSSION

Under 42 U.S.C. § 405(g), this Court may set aside the denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 587 U.S. 97, 97 (2019) (internal citations omitted). When gauging substantial evidence, the Court must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court may not affirm the decision of the ALJ for a reason on which the ALJ did not rely. *Id.* at 1010. Only the reasons identified by the ALJ fall within the Court's review. *Id.*

2

### A. The "Credit-As-True" Three-Factor Test

The Court also has "discretion to remand a case either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court "may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Id.*

The credit-as-true test has three factors. *Garrison*, 759 F.3d at 1020. (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand"; and (3) "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Id.*; *see also Kimberly B. v. Saul*, No. 6:18-cv-00925-SB, 2020 WL 755893 at *3 (D. Ore. Feb. 14, 2020).

"Even if those requirements are met . . . we may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

A "remand for an immediate award of benefits is appropriate, however, only in 'rare circumstances'" and is an "extreme remedy." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

3

While courts have "recognized the impact that delays in the award of benefits may have on claimants," such delays "do not 'obscure the more general rule that the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.'" *Treichler*, 775 F.3d at 1106 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000); *see also Brown*-Hunter, 806 F.3d at 496 ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error."); see *also Miranda W. v. Saul*, 509 F. Supp. 3d 1270, 1286 (D. Ore. 2020) ("The issue turns on the utility of further proceedings. A court may not award benefits punitively . . .").

- **First Factor**

The first factor of the credit-as-true test requires "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Garrison*, 759 F.3d at 1020.

Defendant concedes the ALJ committed reversible error and does not substantively address plaintiff's assignments of error. *E.g.* Dkt. 15 at 3 ("the Commissioner agrees that this Court should remand the ALJ's decision for further evaluation of the residual functional capacity (RFC) finding."). Defendant instead argues "the second and third elements necessary to remand for a finding of disability are not met." Dkt. 15 at 3.

Thus, the Court finds plaintiff satisfies the first factor of the credit-as-true test.

- **Second Factor**

The second factor of the credit-as-true test requires "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

Defendant argues a remand is required as the ALJ's RFC "is inconsistent with the persuasive prior administrative medical findings of Rita Flanagan, Ph.D., Gary Nelson, Ph.D., and Renee E, Ph.D." Dkt. 15 at 4. Specifically, defendant argues the ALJ's RFC fails to properly capture the medical findings of these three individuals on plaintiff's "ability to socialize and adapt." Dkt. 15 at 4.

Below, the ALJ found Dr. Flanagan "opined the claimant was able to interact for brief periods of time on a *superficial basis* with others in a work setting, but he was not well suited to work with the public or closely with coworkers." AR 730 (emphasis added) (citing AR 89-110). The ALJ's finding matches Dr. Flanagan's finding on plaintiff's social limitations. AR 96, 107-08 ("Homeless. Not well suited to work with the public or closely with coworkers. However, is able to interact for brief periods of time on a superficial basis with others in a work setting.").

The ALJ noted Dr. Nelson "affirmed the opinion of Dr. Flanagan." AR 730 (citing AR 113-52). Dr. Nelson's finding simply reiterates the same social limitation as Dr. Flanagan found. AR 127, 147 ("Homeless. Not well suited to work with the public or closely with coworkers. However, is able to interact for brief periods of time on a superficial basis with others in a work setting.").

The ALJ also found Dr. E "opined the claimant retained the capacity to interact with others on an *occasional/superficial* basis and could accept instructions from a supervisor." AR 731 (emphasis added) (citing AR 841-49, 851-59). The ALJ's finding matches Dr. Flanagan's finding on plaintiff's social limitations. AR 847, 857 ("The claimant retains the capacity to interact with others on an occasional/superficial basis. The ability to accept instructions from a supervisor is retained.").

The ALJ found each of the above three opinions were "partially persuasive" as to plaintiff's social limitations. AR 731. Specifically, "all three doctors agree that the claimant should limit social interaction" and "[t]hese assessments are consistent with the claimant's own reports" and thus "that portion of their opinions is persuasive." AR 731.

From the above, the ALJ formulated an RFC that states, among other limitations, that plaintiff "cannot interact with the general public and can have *occasional interaction* with coworkers and supervisors, but he cannot work in a team-oriented environment." AR 726 (emphasis added).

The ALJ then posed a hypothetical to the Vocational Expert ("VE") at the August 2024 hearing which matched the RFC on this limitation. AR 789 ("They could have no interactions with the general public and only occasional interaction with coworkers and supervisors, but not in a team-oriented environment.").

Defendant now argues the ALJ's RFC "included only a limitation to '*occasional* interactions with coworkers and supervisors'" which "is a *quantitative rather than qualitative* measure, and nothing in the ALJ's decision explains this modification—nor how a person capable of only interacting for brief periods of time on a *superficial* basis with others in a work setting could even occasionally tolerate contact that was more than superficial." Dkt. 15 at 4 (emphasis added). Defendant continues that this "affected the decision because the hypothetical questions presented to the vocational expert did not include the persuasive qualitative restrictions on Plaintiff's social contact." Dkt. 15 at 4. "Remand is therefore required for the ALJ to resolve the discrepancy between the RFC and the persuasive prior administrative medical findings." Dkt. 15 at 5.

An ALJ's RFC need not reflect medical testimony verbatim, and instead "adequately captures restrictions . . . where the assessment is consistent with restrictions identified in the medical testimony" and the record. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

Even so, this Court has recognized a distinction between "occasional" and "superficial" limitations in certain situations. *See Tahni K. v. Comm'r of Soc. Sec. Admin.*, No. C23-5761-BAT, 2024 WL 49694 at *2 (W.D. Wash. Jan. 4, 2024); *but see Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017) (rejecting a claimant's argument distinguishing occasional versus superficial contact based on the full context of the medical evidence).

Defendant concedes here the ALJ erred by not including a limitation for superficial interactions, but the mere existence of an error does not automatically require further proceedings to correct said error. *See Connie P. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-00799-MK, 2023 WL 3116749 at *5-7 (D. Oregon Apr. 27, 2023) (finding the ALJ erred by only including a limitation for "occasional" when providers also discussed "superficial" contact, but nonetheless ordering a remand for benefits).

To illustrate, the Court in *Connie P.* reasoned that each of the jobs identified by the VE and adopted by the ALJ required a reasoning level of two. *Id*. at *6. As "jobs with a reasoning level of two require the worker to accept detailed written or oral instructions, which exceed Plaintiff's credited limitation to superficial social interactions . . . the VE did not identify any jobs that Plaintiff could perform given her credible social limitations" meaning "the ALJ would be required to find Plaintiff disabled." *Id.*; Dictionary of Occupational Titles ("DOT") at 1011 (4th ed. Rev. 1991) (defining reasoning level two as

being able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" among other limits).

Here too, each of the three jobs identified by the VE at the August 2024 hearing (Hospital Cleaner; Laborer, Store; and Industrial Cleaner), AR 736, 789, similarly have a reasoning level of 2 according to the Dictionary of Occupational Titles. DOT xvii, xxii, 248, 282, 947, 1009-11 (4th ed. Rev. 1991). When the ALJ asked the VE if their "testimony consistent with the DOT and the SCO and/or your experience and training" the VE answered "[y]es, all of it." AR 790.

Thus, had the ALJ fully credited the above provider's "superficial" findings as true as defendant asserts, the ALJ would have been required to find plaintiff was disabled as the jobs identified by the VE would be insufficient.

- **Third Factor**

The third factor of the credit-as-true test requires "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. Even after considering all three factors, remand is also warranted when the "record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Burrell*, 775 F.3d at 1141 (internal quotation marks omitted); *see also Revels*, 874 F.3d at 668 n.8 (noting that remanding "[al]though each of the credit-as-true factors is met" due to the "record as a whole leav[ing] serious doubt as to whether the claimant is actually disabled" is "rare.").

Defendant argues the "record also contains other questions that cast doubt over Plaintiff's claim that disability is the correct outcome in this case." Dkt. 15 at 5. In so arguing, defendant asserts "[p]laintiff's providers often noted his symptoms as stable"

8

and the "ALJ provided multiple valid reasons supported by substantial evidence to discount Plaintiff's complaints of totally debilitating impairments, including Plaintiff's inconsistent statements, his daily activities, and the unremarkable clinical findings." Dkt. 15 at 5.

Defendant argues these issues require "further analysis on remand." Dkt. 15 at 5. However, the Ninth Circuit disapproved of a similar argument:

> Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand *for the purpose of allowing the ALJ to have a mulligan* qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis.

*Garrison*, 759 F.3d at 1021 (emphasis added); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotation marks omitted) ("Allowing the Commissioner to decide the issue again would create an unfair heads we win; tails, let's play again system of disability benefits adjudication."); *see also Kimberly B., 2020 WL 755893 at *6* (rejecting the Commissioner's argument that a remand was required to "reevaluate" the record).

Regardless, defendant's reliance on unremarkable clinical findings or daily activities to argue for further proceedings is inapposite.

**Stability / Unremarkable Clinical Findings.**

Defendant references "unremarkable clinical findings," but only specifically cites how "[p]laintiff's providers often noted his symptoms as stable." Dkt. 15 at 5 (citing AR 461, 463, 467, 471, 473, 477, 483, 487, 490, 495, 500, 503, 516, 520, 522, 524, 527, 529, 532, 656, 658, 660, 662, 664). In so arguing, defendant reiterates the string citation

9

the ALJ made in finding "claimant's reports of limitations are also inconsistent with his relatively stable presentation at exams." AR 727.

The string cite utilized by both the ALJ and the defendant reference several notes recounting plaintiff's visits through Behavioral Health Services. *See* AR 426, 508, 582.

The Ninth Circuit "emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* Such improvement also "does not always mean that a claimant can function effectively in a workplace." *Id.* Rather, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Id.*

Here, each of the cited Behavioral Health Services records contain an isolated note that plaintiff was "stable." Yet, similar to the situation discussed above in *Garrison*, the full context of these notes demonstrate a waxing and waning of symptoms. *E.g.* AR 461 ("Client states he is having a lot of anxiety in his chest and physically feels excessive energy."), 467 ("Client stated he stayed in bed for a couple of days and felt guilty about it."), 483 (plaintiff reports feeling better and that he's receiving medication at a higher dosage), 503 (plaintiff reporting that "'[i]f I have to go back to work and have a panic attack, I'll lose all progress,' and 'I don't trust my own judgement.'"), 520 ("Client reported that his anxiety has been present in a lot of different situations in his life."), 524

("Client reported feeling that he is 'procrastinating' to an unhealthy degree."), 526 ("'I don't trust myself. It's different now than it was before, but this is where I'm at. Before it was 10/10 no trust and now it is 8/10.'"), 532 ("'I am so hard on myself. I feel like I've been through this so many times now, I should know how to use all these things (tools).'"). Further, many of these appointments were held by telephone due to the ongoing COVID-19 pandemic, limiting the provider's ability to observe plaintiff's appearance and actions. *E.g.* AR 495, 516, 520, 522, 524, 656, 658, 660.

Even so, the mere fact a patient is noted as "[s]table" does not mean that patient is able to work per se. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (rejecting an ALJ's reliance on the fact a provider found the claimant "stable" as the full "treatment notes do not indicate that he believed that claimant was sufficiently stable to return to work even when on medication" and "his references to claimant being 'stable' may have simply meant that she was not suicidal.").

The record containing notes plaintiff was "stable," without more, does not create an outstanding issue for the credit-as-true test in this matter.

To the extent defendant also relies on additional findings discussed by ALJ, such as notes the plaintiff had "appropriate appearance" or "normal attitude" during appointments or completed various tests (memory, fund of knowledge, etc.), Dkt. 15 at 5 (citing AR 727-30), picking out these few isolated instances are similarly insufficient to create an issue or to establish that plaintiff is able to work and thus not disabled. *Garrison*, 759 F.3d at 1017.

**Daily Activities**

11

Defendant's argument also references plaintiff's "daily activities" as a reason for requiring further proceedings. Dkt. 15 at 5.

The ALJ found plaintiff "report[ed] of activities including helping his landlord with tasks around the property, preparing his own meals, looking after household pets, doing his own laundry and cleaning, shopping for himself, driving, making model cars, using the internet, and reading are inconsistent with the claimant's statements of being totally unable to motivate himself, concentrate, or complete tasks." AR 727.

At the ALJ's August 2024 hearing, plaintiff testified he helps his landlord with tasks such as caring of her cats, cleaning, changing lightbulbs, and other similar chores. *E.g.* AR 770, 776. Plaintiff elaborated that these tasks occurred irregularly and estimated each activity only lasts "an hour, or a couple hours." AR 770; *see also* AR 782 (plaintiff testifying he cannot spend more than "15 or 20 minutes" on hobbies such as building model cars).

Plaintiff also testified that starting in November 2021 he did some kitchen cleanup and helped the landlord; he had previously been homeless and living in a shelter; a 72-year-old family friend who has cancer had given him a room to stay in at her home and did not charge rent, and out of gratitude he did what he could – "little incremental stuff" around the house and errands to help her. AR 768-76.

The ALJ's decision repeatedly references plaintiff's daily activities as a basis for denying benefits. AR 727-30 (noting repeatedly plaintiff's "activities of daily living" or "functioning in his personal life").

The mere fact plaintiff engages in daily activities is insufficient to create ambiguity or defeat a finding of disability in the present matter. *Garrison*, 759 F.3d at 1016; *see*

*also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

These daily activities "as [plaintiff] described them . . . do not contradict his other testimony" and also "do not meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

### III. CONCLUSION

For these reasons, the Court concludes the ALJ improperly determined plaintiff to be not disabled, and that a remand for award of benefits is the appropriate remedy. Therefore, the Court reverses and remands the ALJ's decision for an award of benefits.

Dated this 13th day of March, 2026.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge